IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       v.<br><br>STEPHEN M. PATTERSON,<br><br>              Defendant. | CASE NO. 2:25-cr-9 |

**O R D E R**

Defendant Stephen Patterson filed two Motions to Dismiss. Docs. 49, 50. The Government filed a Response in opposition, doc. 54. On December 16, 2025, I held a final pretrial conference, at which the parties presented oral argument on these Motions. For the following reasons, I **DENY** Defendant's Motions to Dismiss, docs. 49, 50.[1]

**BACKGROUND**

The Government filed an Information against Defendant. Doc. 1. Defendant is charged with three counts of a misdemeanor under O.C.G.A. § 16-6-8 for public indecency. The Government alleges that Defendant, while incarcerated at the Federal Correctional Institution in Jesup, Georgia ("FCI Jesup"), "did unlawfully perform a lewd act by exposing his sexual organ and appearing in a state of partial nudity in a public place." Id. The Government alleges that Defendant performed these acts on three separate occasions: on or about December 6, 2023; May 6, 2024; and May 8, 2024.[2] Id.

---

[1]     Defendant has consented to my plenary review. Doc. 41.

[2]     Defendant is charged under the Assimilative Crimes Act, which provides for federal prosecution of state crimes if they occur on federal property. Because Defendant was an inmate at FCI Jesup (a federal prison subject to concurrent jurisdiction) at the time the alleged crimes occurred, this Court possesses jurisdiction to hear this criminal case. See 18 U.S.C. § 7(3) (providing for concurrent

On October 30, 2025, I conducted a Faretta hearing to consider Defendant's request to proceed pro se. Doc. 42. At the hearing, Defendant requested additional time to file pretrial motions. I granted Defendant 21 days to file all pretrial motions. Defendant timely filed the instant Motions, and the Government timely responded.

## DISCUSSION

Defendant filed a Motion to Dismiss the Information. Doc. 49. Defendant argues that the Government has not provided him with personal property, including legal materials pertinent to his defense. Defendant argues that he requires these materials to defend against the charges and question the credibility of Government witnesses. Id. Defendant also argues that these materials include multiple drafts of writeups related to the incidents that are relevant to his defense. Id.

Defendant filed a second Motion to Dismiss. Doc. 50. Defendant argues that the write-up evidence mentioned above is exculpatory. Id. He argues that the Government's failure to produce that evidence constitutes a Brady violation. Defendant argues that the appropriate sanction, therefore, is dismissal. Id.

The Government argues in response that Defendant has not met the standard to establish a Brady violation. Doc. 54. The Government states that all of Defendant's personal items have been delivered to Glynn County Jail, where he is currently housed. The Government argues that there are multiple drafts of writeups related to count 2 only to correct a "policy reference error" in the initial draft of the writeup. Id. at 2–3. The Government asserts that Defendant has not demonstrated a Brady violation because the evidence he seeks does not exist. Id. at 3.

---

jurisdiction between the relevant state and the United States on lands reserved or acquired for the use of the United States); 18 U.S.C. § 13 (providing for federal prosecution of state-level crimes on territory covered by 18 U.S.C. § 7).

The parties' arguments concern a dispute that has persisted throughout this case. Defendant has consistently asserted that his personal belongings were placed in storage while he was incarcerated at FCI Jesup. At the October 30, 2025 hearing I held to address Defendant's desire to proceed pro se, I directed the Government to take steps to locate Defendant's personal belongings and ensure that he received them.

At the December 16, 2025 hearing on the instant Motions, Defendant asserted that he has received some of his personal belongings, but not all of the property that he believed was located at FCI Jesup. Defendant explained that he kept copies of all writeups related to the incidents for which he is charged and that those documents are included in the personal belongings that he kept at FCI Jesup. Defendant argued that the writeup pertaining to Count 2 was redrafted multiple times. One of the drafts featured evidence that demonstrated that other witnesses were present and may have been at least partially at fault for the incident, according to Defendant. However, in the final draft produced in discovery, that information was omitted. Although Defendant contends the earlier drafts, and other items in his personal property, may be helpful for his defense in this case, Defendant has not explained how those items would negate his guilt, cast doubt on the Government's case, go to the credibility of a witness, or reduce a potential sentence.

Defendant admitted at the hearing that he has received some personal belongings at Glynn County Jail, but he reiterated that his documentation and materials he intends to use to mount his defense in this case remain missing. In light of the representations at the December 16, 2025 hearing, the Court extended the time for the parties to work to locate Defendant's purported missing property and ordered the parties to provide a status report describing their efforts.

On January 9, 2026, the parties filed the required status report. Doc. 63. The report states that the Government has produced "two prior versions of the reports in connection with Count 2," which the Court understands to mean the "writeups" that Defendant mentioned at the December 16, 2025 hearing. The report also states that the Government had made additional requests for Defendant's purported missing property after the December 16, 2025 hearing, and that the Government produced personal property records (ostensibly received from FCI Jesup). The Government states it was informed that all identified areas have been searched, and no additional personal property belonging to Defendant has been found.

The record demonstrates that the Government has taken all reasonable steps to locate additional personal property that Defendant contends is located at FCI Jesup (where he was incarcerated), but those efforts have not yielded any additional property. It is feasible that Defendant's personal property was lost, destroyed, or never existed, and the record shows the prosecution in this case has taken all reasonable efforts to locate property that Defendant seeks. Defendant has not presented any evidence that suggests the prosecution or any individual at FCI Jesup has made any effort to deliberately deprive him of his personal property or to, in any way, interfere with Defendant's ability to defend against the charges in this case.[3]

Defendant has not met the standard to establish a <u>Brady</u> violation. The prosecution violates due process when it suppresses "evidence favorable to an accused upon request . . . where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). When a district court dismisses an indictment (or information) for <u>Brady</u> violations, it does so based on its inherent

---

[3] Defendant has elected to proceed pro se in this case, but he not without resources to seek out or obtain evidence. Defendant is assisted by standby counsel, and Defendant has the ability to request and obtain appropriate investigative services. Additionally, Defendant has had ample time to litigate the issue of his purported missing personal property.

4

power to sanction prosecutorial misconduct.  United States v. Lyons, 352 F. Supp. 2d 1231, 1251–52 (M.D. Fla. 2004) (citing United States v. Jordan, 316 F.3d 1215, 1248–49 (11th Cir. 2003)).  To establish a Brady violation, a defendant must demonstrate "that the prosecution possessed favorable evidence not given to the defendant, and that, had the evidence been disclosed to the defense, a reasonable likelihood exists that the outcome of the proceedings would have been different."  United States v. Marks, 619 F. App'x 904, 906 (11th Cir. 2015) (citing United States v. Hansen, 262 F.3d 1217, 1234 (11th Cir. 2001)).

Defendant has not established a Brady violation.  First, Defendant does not allege that the Government possesses the evidence he seeks.  Rather, he insists that the evidence exists, but he does not have it.  For its part, the Government states that it does not possess the evidence either, and it has taken all reasonable steps to locate the evidence.  Ultimately, Defendant has not shown that the Government possesses any evidence that it has not disclosed to Defendant.

Second, Defendant has not shown a reasonable probability that the evidence would change the outcome of a potential trial.  Defendant's assertions about what the missing evidence would contain are conclusory.  Defendant has not explained how the evidence have any material impact on the case.  See United States v. Jordan, 316 F.3d 1215, 1252 (11th Cir. 2003) (finding that Brady only obligates the Government to disclose favorable evidence that is "material" and defining materiality as a "reasonable probability of a different result[]") (quoting Kyles v. Whitley, 514 U.S. 419, 434 (1995)).  Therefore, Defendant has failed to establish a Brady violation or any other basis for dismissal.

## CONCLUSION

For the foregoing reasons, I **DENY** Defendant's Motions to Dismiss, docs. 49, 50.

**SO ORDERED**, this 12th day of January, 2026.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA