**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>STEPHEN M. PATTERSON,<br><br>    Defendant. | CASE NO. 2:25-cr-9 |

## **O R D E R**

On April 27, 2026, I held a sentencing hearing and issued a judgment.[1]  See Docs. 111,

112.  Defendant Steven M. Patterson then filed a notice of appeal.  Doc. 113.  To assist with

appellate review, I memorialize my reasoning supporting the written judgment.[2]  I also address a

clerical error in the Statement of Reasons.  This Order does not modify Defendant's sentence or

the foundation on which it rests.

## **BACKGROUND**

On March 16, 2026, Defendant appeared for a bench trial on three separate charges of

Public Indecency, 18 U.S.C. §§ 7 and 13 (O.C.G.A. § 16-6-8) charged in the Information.  Doc.

1.  Defendant was found guilty of all three counts.

---

[1]     Defendant consented to my plenary review.  Doc. 41.

[2]     While a party filing a notice of appeal typically divests a trial court of jurisdiction over matters raised on appeal, trial courts retain jurisdiction "to act in aid of the appeal[.]"  Madura v. BAC Home Loans Servicing, LP, 655 F. App'x 717, 723 (11th Cir. 2016) (citing Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, 895 F.2d 711, 713 (11th Cir. 1990)).  Courts recognize that supplemental explanation can assist with appellate review.  See, e.g., Markland v. Centro Grp., LLC, Case No. 20-cv-20610, 2021 WL 1705754, at *5–6 (S.D. Fla. Mar. 24, 2021) ("An order that explains reasoning and analysis not previously articulated provides great assistance."), aff'd sub nom. In re Centro Grp., LLC, Case No. 21-11364, 2021 WL 5158001 (11th Cir. Nov. 5, 2021).  Thus, as my reasoning was not fully articulated before, I supplement my reasoning here.

On April 14, 2026, the United States Probation Office filed a Presentence Memorandum with a sentence recommendation.  Doc. 107.  I then ordered the parties to submit any objections to this memorandum on or before April 23, 2026.  Doc. 108.  I did not receive any objections by the deadline.

I held the sentencing hearing on April 27, 2026.  Defendant refused to participate in the hearing.  In fact, Defendant refused to leave the United States Marshal's holding cell at the courthouse.  Given Defendant's refusal, the undersigned directed the Court's information technology personnel to place a television in the cellblock, just outside of the holding cell where Defendant was housed.  The television allowed for live, real-time, two-way audio and video.  In other words, Defendant could see and hear a feed from the courtroom, and I could see and hear the holding cell.

Throughout the hearing, Defendant acknowledged he could hear what was transpiring during the hearing.  I reminded Defendant several times that he could, at any time, elect to participate in the hearing, either through the video feed or in the courtroom.  Instead of participating, Defendant made occasional inappropriate outbursts.  Defendant also attempted to conceal his body from the camera's view, positioning himself behind a partition in the holding cell.  But portions of Defendant's body were still visible in the video feed.  At some point during his outbursts, Defendant vaguely stated that he had submitted objections to the Presentence Memorandum, but he was unclear and combative during those statements.

I asked Defendant multiple times if he wanted to make any statement in mitigation of sentence.  Despite being able to see and hear what transpired in the courtroom, Defendant declined to make any statement or argument, aside from a short, vague, and incoherent statement.  I asked Defendant to clarify his statement, but he did not.

Counsel for the Government presented argument during the hearing. During that portion of the hearing, Defendant made repeated outbursts. Defendant exclaimed that Government's counsel needed to "watch what you say." Defendant then shouted a lengthy, rambling, expletive-laden tirade. I understood Defendant's statements to be threats, and I explained that Defendant would not be allowed to disrupt the proceedings.[3] At a certain point, I directed the information technology personnel to mute Defendant's microphone so that counsel for the Government could conclude her arguments, but ensured Defendant could still see and hear all that transpired in the courtroom. I explained to Defendant that he could still change his behavior and participate fully in the hearing.

I then adopted the Probation Officer's finding that total offense level was nine and Defendant's criminal history category was five, and, therefore, the guideline range was 18 to 24 months of imprisonment, up to one year of supervised release, probation of one to five years, a fine of $2,000 to $20,000, along with a mandatory special assessment. I acknowledged that Defendant made a vague reference to objections but explained that the Court had not received any objections, and that Defendant largely declined to participate in the proceeding. As a result, I determined there were no objections to the Presentence Memorandum and, at a minimum, Defendant had not asserted any discernible objections during the hearing. I then sentenced Defendant to 24 months of imprisonment to be served consecutive to his current term, no probation, no supervised release, no restitution, and no fine, but payment of the mandatory special assessment.

After I announced the sentence, I informed Defendant about his appeal rights. I then asked if there were any additional matters to address. I directed the information technology

---

[3] Defendant sent a letter to the Court after the hearing acknowledging that he made the statements but disclaiming that the statements were threats. Doc. 116.

personnel to unmute Defendant's microphone.  Defendant stated that he wanted to appeal.  I directed the Clerk of Court to assist Defendant filing a notice of appeal.  Defendant made a somewhat ambiguous statement about addressing his "objections."  I explained that Defendant had opportunity to address his objections earlier and he did not do so, and I explained that that sentence had already been announced.  Defendant stated that he did not have anything else to present at that time.  The hearing concluded at 11:21 a.m.

At 4:10 p.m. on the same day, April 27, 2026, the Clerk of Court docketed Defendant's written objections.  The objections are dated April 20, 2026, which suggests Defendant signed and mailed the objections before the deadline.  See Doc. 110.  It appears that delay in the mail prevented the Court from receiving the objections before the sentencing hearing.

I reviewed Defendant's written objections immediately upon receiving them.  For the reasons explained below, I determined that the objections lacked merit.  I signed the written judgment and statement of reasons on April 27, 2026, after reviewing the objections.  The judgment and statement of reasons were docketed on April 28, 2026 and April 30, 2026, respectively.  Docs. 112, 115.

**DISCUSSION**

I.      **Defendant's Objections**

I reviewed Defendant's objections, the information in the Presentence Memorandum, and the Sentencing Guidelines before signing the written judgment.  Defendant objected to the Presentence Memorandum's discussion and assessment of his criminal history and to the manner the United States Probation Office conducted its investigation.  Doc. 110 at 1.  For the criminal history objections, Defendant objected to: receiving three criminal history points for a sentence of imprisonment for offenses he committed in 2009; a statement in the memorandum that he

violated a probation warrant in 2017; and receiving three criminal history points for a sentence of imprisonment for crimes committed in 2007.  Id.  Defendant implied that his offenses in 2007 and 2009 were too old to warrant criminal history points and that the statement in the Presentence Memorandum about his 2017 probation warrant violation was inaccurate.  Id. at 1–2. As to the investigation, Defendant contended that he was not interviewed "prior to the [Presentence Memorandum]" as part of an investigation, implying that an interview is required. Id. at 2.

I concluded that Defendant's objections to the criminal history calculation lacked merit because he was mistaken about the timeline courts use when calculating criminal history points. Under the applicable guidelines, a court should count a "a prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense[.]"  U.S.S.G. § 4A1.2(e)(1).  This includes when "any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period."  Id.

Defendant's 2009 offenses led to sentences of imprisonment that clearly fell within the 15-year period.  Here, Defendant commenced the last instant offense in this case on May 8, 2024, so the 15-year period thus opened in May 2009.  Doc. 1 at 3.  Defendant was incarcerated for his 2009 offenses until November 16, 2011.  Doc. 106 at 6.  Thus, his 2009 offense fell within the 15-year period.  And, because this period of incarceration fell within the 15-year period, whether Defendant violated a probation warrant in 2017 is immaterial to the criminal history points he received for his 2009 offenses.  Thus, I was not convinced by Defendant's objections about the 2009 offenses and the 2017 probation warrant violation.

Defendant's 2007 offenses also led to sentences of imprisonment that fall within the 15-year period.  "Sentences imposed upon revocation of probation can 'affect the time period under which sentences are counted under § 4A1.2(e)(1)'"  United States v. Shannon, 449 F.3d 1146, 1148 (11th Cir. 2006) (quoting United States v. Cornog, 945 F.2d 1504, 1507 (11th Cir. 1991)) (counting a conviction that was imposed outside the 15-year period when the defendant was later imprisoned for breaching the conditions of his probation within the 15-year period).  For his 2007 offenses, Defendant was imprisoned for one year and received a suspended sentence of five years of imprisonment, and then he was placed on supervised probation.  Doc. 107 at 5.  In 2012, Defendant violated the terms of this probation and was sentenced to six years of imprisonment. Id.  This period of incarceration fell within the 15-year period.  Thus, Defendant was incarcerated for his 2007 offenses within the 15-year period, and there was no issue with the criminal history points he received for these offenses.

Defendant's objection about the lack of a pre-Memorandum interview also lacked merit. The United States Probation Office did not prepare a full presentence investigation report—only the Presentencing Memorandum.  I expressly concluded during the sentencing hearing that it could proceed under Federal Rule of Criminal Procedure 32(c)(1)(A)(ii) without an investigation.  Defendant does not point to any authority that requires the United States Probation Office to interview a defendant before preparing a presentence memorandum.  Rule 32 does not require an interview for a presentence memorandum, and I am not aware of any other authority that would require such an interview.  See Fed. R. Crim. P. 32; United States v. Martinez, 322 F. App'x 684, 686 (11th Cir. 2009) ("[T]he parties have not cited, and research does not reveal, any case law from the Supreme Court, this Court, or other circuits supporting the proposition that a defendant has an absolute right to be interviewed by a probation officer prior

to completion of the PSI.").  Moreover, Defendant does not explain how an interview would have had any bearing on his sentence.[4]  Finally, Defendant had an opportunity to raise this objection (and elaborate on it) at the sentencing hearing, but he declined to do so.  Therefore, I concluded that Defendant's objection regarding the lack of a pre-Memorandum interview lacked merit, and I issued a written judgment consistent with the sentence announced at the hearing.

## II.    Statement of Reasons

I also address a typographical error in the Statement of Reasons.  In the Statement of Reasons, I checked the box stating that it adopted a presentence investigation report.  Doc. 115 at 1.  This is a clerical error.[5]  During the sentencing hearing, I found that there was no need for a presentence investigation report or investigation under Rule 32.  The audio recording of the hearing and electronic docket confirm that the United States Probation Office did not prepare a full presentence investigation report, and, instead, I relied on the Presentence Memorandum.  Therefore, I should have checked the box stating that "the record establishes no need for a presentence investigation report pursuant to Fed. R. Crim. P. 32."  Id.

**SO ORDERED**, this 27th day of May, 2026.

        BENJAMIN W. CHEESBRO
        UNITED STATES MAGISTRATE JUDGE
        SOUTHERN DISTRICT OF GEORGIA

---

[4]    I also note that Defendant's assertion that he was not interviewed is conclusory or unsupported.  I do not, at this time, make any determination about whether such an interview occurred.

[5]    Despite the filing of a notice of appeal, I may still address clerical errors.  Fed. R. Crim. P. 36 ("[T]he court may at any time correct a clerical error in a judgment, order, or other part of the record[.]"); see also Showtime/The Movie Channel, Inc. v. Covered Bridge Condo. Ass'n, 895 F.2d 711, 713 (11th Cir. 1990) (explaining that a trial court may "correct clerical mistakes" even after the filing of a notice of appeal).